## TEXAS & PACIFIC RAILWAY COMPANY VS. MANUEL GARCIA.

### IN SUPREME COURT, TYLER TERM, 1884.

*Practice.*—The fact that there has been a mistrial of the cause, furnishes no legal reason why the cause should not be called up again at the same term and tried.

*Same.—Argument of Counsel.*—It is not error to permit counsel for the plaintiff in the closing argument, in reply to an argument by defendant's counsel upon the law of the case, to discuss the same question, and to read and commend on authorities applicable to the question.

*Same.*—If counsel for one party pursues a line of argument not called for by the

facts, and in itself improper, and thereby invites a reply, the party so offending will not be heard to complain of the reply.

*Common-Carrier—Liability—Limited Pass.*—Where a drover's pass over a railroad contains a provision that neither women nor minors shall travel thereon as assistants, yet if the conductor, seeing such pass and knowing the assistants to be minors, receives them as passengers, the liability of the carrier is not affected by such provision.

*Negligence—Fact Case.*—Note this case for evidence held sufficient to support a verdict for damages for personal injuries caused by negligence of the railroad company.

Appeal from Harrison county.

The ruling of the court in reference to the admission of proof, to the effect that the "drover's pass," on which Sixto Garcia, and his son Manuel and another boy, were traveling, contained a provision that neither "minors nor women" should travel thereon as assistants to the drover, was in no manner important under the facts presented. The conductor of appellant's train saw that pass, and knew who the assistants were who were traveling on it; knew that they were minors, and notwithstanding this received them as passengers. Under this state of facts they were entitled to all the rights, in so far as any question involved in this case goes, to which any other passenger on that train would have been entitled, and proof of the contents of the "drovers pass" would not in the slightest degree have affected the case.

The fact that there had been a mistrial of the cause, furnishes no legal reason why the cause should not be called up again at the same term and tried. The statute decrees that "when a jury has been discharged as herein provided, without having rendered a verdict, the cause may be again tried at the same or another term.

(Rev. St., Article 1314.)

If any reason existed why the defendant could not safely try the cause when it was called the second time, then an application to continue or to postpone the case until some later day of the term should have been made. No such motion was made, and so far as the record shows the appellant was not in any manner prejudiced by the trial of the cause at the same term at which the mistrial occurred.

It is not error for the court trying a cause to permit counsel for the plaintiff in the closing argument, in reply to an argument upon

the law applicable to a case made by counsel for the defendant, to discuss the same question and to read and commend on authorities applicable to the question. The line and method of argument to be pursued by counsel, in any stage of the trial, is subject largely to the discretion of the trial court, and unless it appears very clearly that such discretion has been abused, this court would not feel authorized to reverse a judgment simply because it might be of opinion that a different course should have been pursued. It is not made to appear that the appellant was in any way prejudiced by the course of argument which counsel for the appellee was permitted to pursue in reply to the legal propositions asserted by counsel for appellant, and the bill of exceptions shows that the argument was in reply.

It appears from a bill of exceptions that counsel for appellee, during the closing argument in the cause, was permitted to use language calculated to arouse the prejudices of the jury against the appellant, and this upon matters not arising from the facts of the case. This practice has been often condemned by this court. (Willis & Bro. vs. McNeill, 57 Texas 474; T. & St. L. R'y Co. vs. Farrell, unreported.) And in some cases such course may afford sufficient ground for the reversal of a judgment.

The language used by counsel for the appellee in the closing argument was highly objectionable. It appears, however, from the bill of exceptions that the language was used in reply to language used by counsel for the appellant, which was but little less, if not fully as objectionable as that used in reply.

If counsel for one party pursues a line of argument not called for by the facts of the case and in itself improper, and thereby invites a reply, the party so, through counsel, violating a proper course of procedure and the rules intended to secure the proper presentation of causes, ought not to be heard to complain of the reply; and in such cases the court will not reverse a judgment on an assignment of error based on such facts.

The main question in this cause is raised by the tenth assignment of error which urges that the court erred in overruling the motion of the appellant for a new trial bad on the insufficiency of the evidence to support the verdict.

The petition was not based on general demurrer, and there was evidence tending to support its averments. The jury having found

a verdict in favor of the appellee, there being a conflict of evidence, but not such a preponderance against the verdict as to authorize this court to set it aside, it must be held that the facts stated by the witnesses for the appellee relating to the want of due care by the employes of appellant are true. As before said, the facts alleged and proved made Manuel Garcia a passenger of the appellant's railway at the time he was injured. There is no objection made to the charge of the court, and as the question of negligence was one for the determination of the jury, their verdict must be sustained if there be evidence fairly tending to prove that there was not the exercise of due care by the employes of the appellant which the law exacts of a carrier toward passengers.

The evidence for the appellee show that Sixto Garcia and his son Manuel, a boy of ten years of age, were passengers on appellant's train from Longview to Marshall ; that the train was a freight train having a car in which passenger rode, and that with the train were four car loads of horses which Sixto Garcia was taking to market, and that on the way from Longview to Marshall the father and son and another boy, who was traveling with them, stayed in the passenger car, the two boys being asleep on a bed which the conductor had made for them, until they arrived at Marshall.

Sixto Garcia testified that when the train reached Marshall, the conductor came to him and said, "Marshall ! Get ready to get off. I am just going to pull you to the stock yards." Whereupon he aroused the two boys and assisted them in getting on their clothes and getting ready, and that in a moment or two the train stopped ; that the train was running very slowly when the conductor spoke to him, and that as soon as the conductor told him he was at Marshall and directed him to get ready to get off, the conductor took his light, went out of the car and got off while the train was still running slowly, after which the train immediately stopped ; that the train again moved very slowly a little forward and again stopped, and that he then thought from what the conductor had said to him, from the conductor getting off the train, and from the stopping of the train, that they were at the proper place for him and the two boys to leave the car, at which time there was no employe of appellant in the car, nor any light in it, it being in the night.

He further stated that after the car stopped the second time he took the two boys and went out of the car for the purpose of get-

ting off; that when he reached the platform of the car it was dark and there was neither light nor any one to aid them in getting off; that he looked for the conductor or some other person and could see no one, and that he then stepped on the car in front of him for the purpose of seing on which side of the train to get off and to see on which side of the train the stock yards were and to look for some employe of the railway company; that he could see better from the car on which he stepped than from the platform of the car which he had left; that when he stepped on the car in front of that in which he had ridden both of the boys were with him, one on each side and held by the hand; that then, without any warning, the train was moved giving a very severe jerk, by which he was thrown forward against the car and his son (Manuel) thrown under the car which ran over him and crushed one his arms and broke one of his legs.

The witness further stated that he and the two boys were strangers at Marshall, and that the conductor knew that fact, and that neither he nor either of the boys knew anything of the relative situation of the depot and stockyards. The testimony of Manuel Garcia was substantially the same as that of his father.

From the conductor's testimony it would appear that Sixto Garcia and the two boys were expected to alight at the place on the main Shreveport track where it was intended to leave the cars in which the horses were. The position of that place in relation to the place where the three did attempt to get off is not shown.

What inference the plaintiff and his father might draw from the language and acts of the conductor, by them related, was a question for the jury. If from the language used they were reasonable authorized to believe it was the intention of the conductor that they should leave the car when it stopped, then they might do so, if not careless in the manner of leaving, without being guilty of contributory negligence.

The car was running slowly when the conductor notified the father that they were at "Marshall," the terminus of their journey on that car, the announcement was made for the express purpose of having them to get ready to leave the car; they were informed that he was just going to pull them to the stock-yards; they were traveling with and for the purpose of taking care of stock, and may they not have been authorized to believe, when the cars stopped, moved on a short distance and stopped agani, that they had reached the stock-yards

and that it was intended they should alight ? The jury, in effect, so found, and we are not prepared to say as matter of law that their finding was wrong.

It is said by an elementary writer of recognized ability "that the calling of the name of a station on coming to a stop, is to be regarded as an invitation to alight ; and a passenger who on such summons leaves the car taking due caution to look around him when practicable, may recover from the company in .case he be injured by ignorantly stepping on an unsuitable place." (Wharton on Negligence, 379, 650.) The author cites Louis vs. R. R., (L. R. 9, C. P. 66,) and Southern R. R. vs. Kendrick, (40 Miss. 374) neither of which are accessible to us here, as authority for the proposition. The rule seems to have been recognized in C. & I. Central R. R. Co. vs. Farrell, (31 Ind. 408.)

The same reasons which led to the adoption of the above rule would apply with as much force in a case like the present as in one in which the name of the station is called after the train is stopped, but in either case it affords a question of fact.

The question seems to have been frequently considered by the English courts, and many of the dicisions of those courts will be found collected by Mr. Hutchinson in his work on Carriers.

To the cases referred to we have no access here, but the author summing up the result of these decisions says, "from which the conclusion to be drawn is, that such companies must be extremely careful not to mislead their passengers into the belief that the halting of a train at a station is meant as an invitation to them to alight, when it is not so intended ; and that if the conduct of the servant engaged in its management is such as may reasonably produce that impression, and the passenger so understands it, and in the attempt to leave the coach at a place where no facilities are provided for his so doing, and while in the exercise of due diligence in doing so he is injured, the company is liable." (Hutchinson on Carriers, section 615.) In every case all the facts surrounding it should be looked to and from those a jury must determine as a question of fact whether the passenger is authorized to believe from the acts or words of the servants of the carrier that it is intended he shall alight from a car at a given time and place, and looking to all the facts in this case, we are not prepared to say that there was not sufficient evidence to justify the jury in finding that the appellee was authorized to believe

that he was expected to alight from the car at the time and place at which he attempted to do so, nor can we say, looking to all the facts, which under the verdict we must assume to be true, that in attempting to alight the appellee did not use such care as a prudent person under like circumstances would be expected to use.

The court did not err in refusing to give the charges referred to in the eight assignment, for it could not declare as a matter of fact that it was not negligence in the conductor of the train to absent himself from the train at the time and for the length of time he was shown to be absent, and besides it would have tended to divert the minds of the jury from other matters which perhaps had more bearing on the question of negligence than had the absence of the conductor.

The verdict is large, but the injuries received are of the most serious character and in such cases, in the absence of some fact tending to show that the verdict is not the result of the honest and deliberate judgment of the jury as to the extent of the injury done to the party complaining, this court has no power to set the verdict of a jury aside.

We cannot say that any such fact appears in this cause and the judgment is affirmed.                                    Stayton, J.